# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IRINA TREST | § | |
| | § | |
| V. | § | CASE NO. 4:12-CV-752 |
| | § | Judge Mazzant |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEMS, INC., | § | |
| WELLS FARGO BANK, N.A., and | § | |
| AH4R-TX 2 LLC | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are Defendants Wells Fargo Bank, N.A. and Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment (Dkt. #35) and Defendant AH4R-TX 2, LLC's Motion to Join in Motion for Summary Judgment (Dkt. #39). The Court, having considered the relevant pleadings, finds that Defendants' motions should be granted.

## BACKGROUND

On January 5, 2004, Plaintiff Irina Trest closed on a re-finance of the property at 7258 Yellow Stone Drive, Frisco, Texas 75034 (the "Property"). Plaintiff executed a $111,200 promissory note originally payable to PrimeLending, A PlainsCapital Company, but subsequently indorsed to Wells Fargo Home Mortgage, Inc., and then indorsed in blank[1] (the "Note"). Plaintiff executed a deed of trust that encumbered the Property with a power of sale as security for Plaintiff's repayment of the Note (the "Deed of Trust"). The beneficiary of the Deed of Trust is identified as Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), "acting solely as a nominee for Lender and Lender's successors and assigns." The Deed of Trust was recorded in the Official

---

[1] Plaintiff disputes that the Note was indorsed in blank, but offers no evidence to contest that this is in fact what occurred. The Court finds that there is no factual dispute that the Note was indorsed in blank.

Public Records for Collin County, Texas, on January 14, 2004, as Instrument Number 2004-0006156.

PrimeLending transferred the servicing of the Note to Wells Fargo Home Mortgage, Inc., effective February 1, 2004. Wells Fargo Bank, N.A. has serviced the Note uninterruptedly from the date of transfer of the servicing rights through the foreclosure sale of the Property on July 3, 2012.

The Deed of Trust, together with the Note, was subsequently assigned of record to Defendant Wells Fargo Bank, N.A. ("Wells Fargo") on June 23, 2011, by an Assignment of Deed of Trust executed by MERS, "as Nominee for PrimeLending A PlainsCapital Company, its successors and assigns" (the "Assignment"). The Assignment was recorded in the Official Public Records for Collin County, Texas, on June 28, 2011, as Instrument Number 20110628000664920.

On April 8, 2011, Wells Fargo[2] mailed to Plaintiff a letter stating that the 2010 Frisco I.S.D. taxes were unpaid and that if proof of payment was not received by May 18, 2011, then Wells Fargo would pay the taxes, establish an escrow account, and increase the monthly payments to account for the escrow payments. Plaintiff admits that she was responsible for paying, but did not pay, the 2010 property taxes for Frisco I.S.D.

On June 20, 2011, Wells Fargo paid the 2010 Frisco I.S.D. taxes in the total amount of

---

[2] Plaintiff objects to the use of the letter because the letter refers to Wells Fargo Home Mortgage and not Wells Fargo. This objection is unfounded. Plaintiff offers no evidence to show that Wells Fargo Home Mortgage is a separate legal entity from Wells Fargo Bank, N.A. Moreover, this Court has previously found that "[o]n May 8, 2004, Wells Fargo Home Mortgage, Inc., merged into its parent, Defendant Wells Fargo Bank, N.A." *See Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 738 (E.D. Tex. 2013). A review of the documents in this case also reveals that both Wells Fargo Home Mortgage and Wells Fargo Bank, N.A. are the same entity as Wells Fargo Bank, N.A. Wells Fargo Home Mortgage is merely a division of Wells Fargo Bank, N.A., and the exhibits confirm this. The challenged exhibits themselves confirm that the documents were sent by and are the business records of Wells Fargo Bank, N.A. Thus, these objections made by Plaintiff are overruled.

$2,258.10, comprised of $1,963.56 for the past-due taxes and $294.54 in late penalties.  On the same day, Wells Fargo mailed to Plaintiff a letter advising her that Wells Fargo paid the taxes, an escrow account was being re-established, and that Plaintiff's monthly payments would increase to repay the amounts already advanced and to collect deposits for future amounts.  On June 21, 2011, Wells Fargo mailed to Plaintiff an escrow disclosure statement that advised Plaintiff that, effective September 1, 2011, her monthly mortgage payment would increase to $1,546.35 to account for the escrow advances and deposits.

Plaintiff's homeowner's insurance policy expired on July 5, 2011.  On August 4, 2011, Wells Fargo mailed Plaintiff a Notice of Expiration of Insurance that informed her of the expiration and requested Plaintiff to provide proof of current coverage.  On August 25, 2011, Wells Fargo mailed Plaintiff a Notice of Temporary Insurance that stated Wells Fargo had not received proof of coverage and that informed her that if Wells Fargo did not receive proof of insurance within sixty days, Wells Fargo would purchase lender-placed insurance from Standard Guaranty Insurance Company at an annual premium of $3,963.33.  On October 7, 2011, Wells Fargo mailed Plaintiff a Notice of Hazard Insurance that stated Wells Fargo had proceeded to purchase insurance due to Plaintiff's failure to provide proof of insurance.

On December 16, 2011, Wells Fargo received by fax evidence of insurance for a policy effective October 18, 2011, through October 18, 2012. Based on the expiration date of the old policy, and the start date of the new policy, there remained a lapse in insurance between July 5, 2011, and October 18, 2011.

Following receipt of the evidence of insurance, and because of the continuing lapse in coverage, Wells Fargo only partially refunded to Plaintiff's escrow account the premium for the

3

lender-placed policy, in the amount of $2,825.71.

Despite notice that her monthly mortgage payment would increase beginning September 1, 2011, due to the establishment of the escrow account, Plaintiff failed to increase the amount of her monthly payments.  Plaintiff testified that she knew she was expected to pay the increased amount, but that she intentionally continued to pay only the lesser amount because she did not feel she owed the higher amount.  As a result of paying less than the amount owed, and making no payment whatsoever in February 2012, Plaintiff's mortgage fell in arrears and default again.

On April 19, 2012, Wells Fargo mailed to Plaintiff a notice of default, which stated that the loan was past due on payments in the amount of $4,837.50, that Plaintiff should cure her default by paying such amount on or before May 23, 2012, and that failure to do so would result in acceleration of the Loan (the "Notice of Default").

On May 31, 2012, Wells Fargo's foreclosure attorneys mailed Plaintiff a Notice of Acceleration, which accelerated the maturity of the debt, and a corresponding Notice of Substitute Trustee's Sale, which set a foreclosure sale date of July 3, 2012.  There were actually four Notices of Acceleration/Sale mailed by Certified Mail on May 31, 2012: (1) one addressed to Irina Davis f/k/a Irene Trest at 7258 Yellowstone Drive, Frisco, Texas 75033; (2) one addressed to Irina Davis f/k/a Irene Trest at 7528 Yellowstone Drive, Frisco, Texas 75034; (3) one addressed to Michael Davis a/k/a Michael L. Davis (Plaintiff's non-borrowing former spouse) at 7258 Yellowstone Drive, Frisco, Texas 75033; and (4) one addressed to Michael Davis a/k/a Michael L. Davis at 7258 Yellowstone Drive, Frisco, Texas 75034.  The Notice of Substitute Trustee's Sale was also filed with the Collin County Clerk on June 11, 2012, and posted on or about the same day at the Collin County Courthouse in the area designated for posting notices of trustee's sales. As noticed, on July 3, 2013,

a foreclosure sale was held, and the Property was purchased by Defendant AH4R-TX 2, LLC ("AH4R").

After Plaintiff had commenced this litigation against Wells Fargo, MERS, and AH4R, Plaintiff communicated a written offer to settle the litigation through her attorney on August 3, 2013. Under Plaintiff's offer, she agreed to dismiss the lawsuit with prejudice and release all claims against Wells Fargo, MERS, and AH4R.  On August 3, 2013, Wells Fargo and MERS's attorney accepted Plaintiff's offer.  On August 4, 2013, AH4R accepted Plaintiff's offer.  On August 6, 2013, Plaintiff filed a Notice of Settlement with the Court.  On September 9, 2013, Plaintiff communicated through her attorney that "she no longer agrees to the settlement." And the same day, Plaintiff filed a putative Notice of Non-Settlement with the Court, stating that although Wells Fargo, MERS, and AH4R "are prepared to conclude the settlement," Plaintiff "no longer desires" to settle.

On December 18, 2013, Wells Fargo and MERS filed a motion for summary judgment (Dkt. #35).  On January 2, 2014, Plaintiff filed a response (Dkt. #40).  On January 13, 2014, Wells Fargo and MERS filed a reply (Dkt. #41).  On January 20, 2014, Plaintiff filed a sur-reply (Dkt. #42).  On April 23, 2014, after a conference with the Court, Wells Fargo and MERS filed a supplemental brief (Dkt. #44). AH4R filed a motion to join the motion for summary judgment filed by Wells Fargo and MERS (Dkt. #39).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp*. *v*. *Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

5

law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49).  The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

### Suit to Quiet Title and Trespass to Try Title

"To prevail in a trespass-to-try-title action, Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not

abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (citation omitted). "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title." *Id.* (citation omitted).

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). To establish a claim for suit to quiet title, Plaintiff must show the following: (1) an interest in specific property; (2) that title to the property is affected by a claim by the defendant; and (3) that the claim, although facially valid, is invalid or unenforceable. *Sadler v. Duvall*, 815 S.W.2d 285, 293, n.2 (Tex. App.–Texarkana 1991, pet. denied). An adverse claim, to constitute a cloud on the title removable by the court, must be one that is valid on its face but is proved by extrinsic evidence to be invalid or unenforceable. *Id.*

Plaintiff assert the following two theories in her trespass-to-try-title claims: (1) she claims that the foreclosure sale to AH4R was ineffective because she allegedly was not in default on the loan; and (2) she claims that MERS lacked the authority to transfer the Deed of Trust to Wells Fargo.

Defendants assert that it is undisputed that Plaintiff was in default on the loan. The Court agrees. It is undisputed that Wells Fargo paid the 2010 Frisco I.S.D. property taxes after Plaintiff failed to pay them. As a result, the "Escrow account disclosure statement and notice of new mortgage payment" advised Plaintiff that, effective September 1, 2011, her payment would increase from $872.16 to $1,546.35 to account for the property taxes and insurance premiums that Wells Fargo had paid and anticipated paying in the future. Plaintiff admits that at the time she received this document she understood that her monthly payment would increase. Plaintiff testified that she did not increase her monthly payment because she did not believe she should have to pay the escrow portion of the payment. Plaintiff erred in making that decision, both factually and legally. By paying

7

less than the amount owed in some months, and by not paying at all in other months, Plaintiff defaulted on the loan.  By April 19, 2012, Plaintiff was past-due in the amount of $4,837.50. As a result of the default, the loan was accelerated on May 31, 2012, and a foreclosure sale was scheduled. At the July 3, 2012 foreclosure sale, AH4R purchased the Property.  Plaintiff offers no actual evidence to substantiate her claims that she never defaulted or to controvert Wells Fargo's summary judgment evidence that she did in fact default.

Plaintiff claims that the assignment of the Deed of Trust to MERS was ineffective, precluding Wells Fargo from foreclosing.  It appears that Plaintiff makes some distinction between MERS holding the "legal interest," as opposed to the "beneficial interest," in the Deed of Trust that somehow precludes a valid assignment.  Plaintiff asserts that MERS did not have the authority to make the assignment to Wells Fargo. Plaintiff argues that MERS's authority to act is a question of necessity, which is a question of fact. Plaintiff also asserts that a question of fact remains about the identity of the lender immediately prior to the Assignment of Deed of Trust.  Defendants assert that Plaintiff's claim fails both factually, based on the language of the Deed of Trust, as well as legally based on prior authorities upholding the MERS system in identical situations.

First, the Court need look no further than the Assignment of Deed of Trust between MERS and Wells Fargo.  In the Assignment, MERS, "as Nominee for PrimeLending A Plains Capital Company, its successors and assigns, hereby grants, assigns, and transfers to: Wells Fargo Bank N.A.….all beneficial interest in" Trest's Deed of Trust "together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust." The Assignment conferred on Wells Fargo all interests in the Deed of Trust, including the right to foreclose upon after Plaintiff's undisputed

8

default.  The Deed of Trust expressly states that "MERS is a separate corporation that is acting solely

as a nominee for Lender and Lender's successors and assigns" and that "MERS is the beneficiary

under this Security Instrument."  MERS, acting on behalf of lender and lender's successors and

assigns, has the right to exercise any or all of lender's rights, which would necessarily include

lender's right to assign its interests in the Deed of Trust.  The Court agrees that the clear,

unambiguous language of the Deed of Trust deprives Plaintiff's claims of any factual or legal merit.[3]

        The law in this circuit is clear that MERS can act as it did in Plaintiff's case.  *See Martins*

*v. BAC Home Loans Servicing, LP*, 722 F.3d 249, 255 (5th Cir. 2013); *Wiley v. Deutsche Bank Nat'l*

*Trust Co.*, No. 12-51039, 2013 WL 4779686, at *2 (5th Cir. Sept. 6, 2013); *Casterline v. One West*

---

        [3] A good explanation of MERS and Texas law can be found in *Richardson v.
CitiMortgage, Inc.*, No. 6:10-cv-119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010).  U.S.
Magistrate Judge Judith K. Guthrie explained as follows:

> Under Texas law, where a deed of trust, as here, expressly provides for MERS to
> have the power of sale, then MERS has the power of sale. *Athey v. MERS*, 314
> S.W.3d 161, 166 (Tex. App.-Eastland 2010).  MERS was the nominee for
> Southside Bank and its successors and assigns. MERS had the authority to transfer
> the rights and interests in the Deed of Trust to CitiMortgage. The Plaintiffs'
> complaints about the role of MERS in this matter lack merit.

> It is further noted that the role of MERS has been the subject of federal
> multidistrict litigation in *In re: Mortgage Electronic Registration Systems (MERS)
> Litigation*, 659 F. Supp.2d 1368 (U.S. Jud. Pan. Mult. Lit. 2009). The MERS
> system is merely an electronic mortgage registration system and clearinghouse that
> tracks beneficial ownerships in, and servicing rights to, mortgage loans. *Id*. at
> 1370. The system is designed to track transfers and avoid recording and other
> transfer fees that are otherwise associated with the sale. *Id.* at 1370 n. 6. MERS is
> defined in Texas Property Code § 51.0001(1) as a "book entry system," which
> means a "national book system for registering a beneficial interest in security
> instrument and its successors and assigns." As noted in *Athey*, mortgage documents
> provide for the use of MERS and the provisions are enforceable to the extent
> provided by the terms of the documents. The role of MERS in this case was
> consistent with the Note and Deed of Trust.

*Bank, FSB*, No. 13-40067, 2013 WL 3868011, at *2 (5th Cir. July 3, 2013).  In addition, this Court has consistently rejected the theory that MERS lacks the authority to transfer. *See, e.g., Lusk v. Wells Fargo Bank, N.A.*, No. 4:11-CV-381, 2012 WL 1836342, at *1, 5 (E.D. Tex. May 21, 2012); *Sanchez v. Bank of America, N.A.*, No. 4:13-CV-158, 2014 WL 316516, at *2 (E.D. Tex. Jan. 27, 2014); *Kazmi v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-375, 2012 WL 629440, at *6 (Feb. 3, 2012), *affirmed by* No. 12-40707, 2013 WL 1153068 (5th Cir. Mar. 11, 2013).

Plaintiff concedes she defaulted on the mortgage and intentionally refused to pay back the escrow items Wells Fargo paid, which resulted in the foreclosure. There is no genuine controversy that Wells Fargo was Plaintiff's lender or that Wells Fargo was assigned the Deed of Trust. Defendants are entitled to summary judgment on Plaintiff's trespass-to-try-title claims.

Defendants also assert that Plaintiff lacks standing to challenge the Assignment because she was not a party to it, and because she alleges nothing that would render the Assignment absolutely void as opposed to merely voidable.

The Fifth Circuit recently clarified an exception to the general rule regarding standing to challenge an assignment. Specifically, the Fifth Circuit stated that a mortgagor may challenge an assignment "on any ground that renders the assignment void." *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 224-25 (5th Cir.  2013). However, after clarifying the "void" versus "voidable" requirement, the Fifth Circuit went on to state that "even assuming that the [plaintiffs] are third-party beneficiaries, the fact that the assignments violated the PSA—a separate contract—would not render the assignments void . . . ." *Id.* at 228; *see also Calderon v. Bank of Am., N.A.*, 941 F. Supp. 2d 753, 765-66 (W.D. Tex. 2013); *Washington v. JP Morgan Chase*, No. SA-11-CV-763-XR, 2013 WL 636054, at *8-9 (W.D. Tex. Feb. 20, 2013); *Sigaran v. U.S. Bank Nat. Ass'n*, No. H-12-3588, 2013

10

WL 2368336, at *3 (S.D. Tex. May 29, 2013). Plaintiff's assertion is that MERS lacked authority

to execute the Assignment, rendering the Assignment void.  Plaintiff challenges the authority of

MERS[4] to execute the assignment to Wells Fargo, but as in *Reinagel*, even accepted as true, the

Assignment is merely voidable but not necessarily void, meaning that Plaintiff would lack standing.

Because the lone challenge asserted by Plaintiff would merely render the Assignment voidable, she

lacks standing to make that challenge, and her claims fail as a matter of law.

Plaintiff has failed to produce summary judgment evidence of her superiority of title. It is

undisputed that the Property was purchased at a foreclosure sale. When she defaulted on the Note,

causing Wells Fargo to foreclose on the Property, the Plaintiff lost any interest she could claim in

the Property, and Plaintiff has no evidence to establish she has an interest in the Property. Moreover,

Wells Fargo's interest in the Property was valid and enforceable, as demonstrated by the Deed of

Trust, and AH4R-TX is a bona fide purchaser of the Property.  Thus, Plaintiff has no basis for an

action based upon trespass to try title or quiet title.

**Breach of Contract Claim**

In order to establish a claim for breach of contract, a plaintiff must establish: (1) the existence

of a valid, enforceable contract; (2) the plaintiff performed or tendered performance; (3) defendant

breached the contract; and (4) defendant's breach caused plaintiffs' damages.  *Valero Mktg. &*

*Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Plaintiff asserts that she was not in breach when MERS first breached the Deed of Trust and

that she was not in breach when Wells Fargo first breached the Deed of Trust by establishing the

---

[4] Moreover, the Court has already rejected Plaintiff's challenge to the authority of
MERS.

escrow account without providing a proper waiver.

The Court agrees with Defendants that Plaintiff has failed to establish a material fact issue on her breach of contract claim.  A party's nonperformance of a contract will be excused when that party's performance is prevented by the other party.  *See Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.--Houston [1st Dist.] 2003, pet. denied); *Erickson v. Rocco*, 433 S.W.2d 746, 751–52 (Tex. Civ. App.--Houston [14th Dist.] 1968, writ ref'd n.r.e.).  There is no evidence that Defendants did anything to prevent Plaintiff from meeting her obligations under the Note and Deed of Trust. The Court agrees that Plaintiff's breach of contract claims fail, because she was in breach.  *See Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 809-10 (N.D. Tex. 2012); *Narvaez v. Wishire Credit Corp.*, 757 F. Supp. 2d 621, 629 (N.D. Tex. 2010).

Plaintiff first defaulted on the Deed of Trust by failing to pay the 2010 Frisco I.S.D. property taxes, failing to maintain property hazard insurance, and finally, by failing to make the required monthly payments due under the Deed of Trust.

There is no evidence offered by Plaintiff that Wells Fargo breached any requirement under the Deed of Trust. Plaintiff conceded in her deposition that Wells Fargo had sent her the written revocation of the escrow waiver.  The Deed of Trust expressly permits Wells Fargo to pay escrow items on behalf of Plaintiff.  In addition, Plaintiff's claims fail because Wells Fargo in fact was her lender and mortgage servicer when it revoked the escrow account in accordance with the Deed of Trust.  Plaintiff has presented no evidence that escrowing Plaintiff's property taxes, and the increases in the escrow amounts, violates the Note or Deed of Trust. The summary judgment evidence demonstrates that the Notice of Default complied in all respects with the Deed of Trust and Texas law.  In this case, Wells Fargo's foreclosure counsel mailed to Plaintiff four Notices of Acceleration

12

advising that the loan was accelerated, the amount now due was $63,413.03, that a Notice of Sale was enclosed, that Plaintiff had the right to reinstate the loan, and that she had the right to bring a court action to assert the nonexistence of a default or assert any other defense to acceleration.

Defendants also assert that since there is no contract between Plaintiff and MERS, any claim for breach of contract fails.  The Court agrees.  The first element of any contract claim is the existence of an enforceable contract. MERS was not itself a party to the Deed of Trust.  MERS is identified as being "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns."  In addition, MERS's act of assigning the Deed of Trust as lender's nominee cannot constitute a breach of contract, because the contract expressly authorizes MERS's actions. Therefore, Plaintiff's breach of contract claim fails as a matter of law.

**Texas Deceptive Trade Practices Act ("DTPA")**

Defendants assert that Plaintiff's DTPA claim fails because she is not a consumer under the statute and there is no evidence of a violation.

To qualify as a consumer under the DTPA, a plaintiff must (1) seek or acquire goods or services and (2) the goods or services purchased or leased must form the basis of the complaint. *Modelist v. Deutsche Bank Nat. Trust Co.*, No. H-05-1180, 2006 WL 2792196, at *7 (S.D. Tex. Aug. 25, 2006) (citing *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 14 (Tex. 1987)). Whether a plaintiff is a consumer under the DTPA is a question of law.  *Id*. (citing *Holland Mortgage & Inv. Corp. v. Bone*, 751 S.W.2d 515, 517 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.)).

In evaluating whether Plaintiff is a consumer under the DTPA, the Court must look to the object of the transaction.  Tex. Bus. & Com. Code Ann. § 17.45; *La Sara Grain Co. v. First Nat'l*

13

*Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex. 1984).  In *La Sara Grain Company*, the Texas

Supreme Court held that a lender may be subject to a DTPA claim if the borrower's "objective" was

the purchase or lease of a good or service.  *La Sara Grain Co.*, 673 S.W.2d at 567.   However, a

person whose objective is merely to borrow money is not a consumer, because the lending of money

does not involve either the purchase or lease of a good or service.  *Riverside Nat'l Bank v. Lewis*,

603 S.W.2d 169, 173 (Tex. 1980).

In the present case, it is undisputed that Plaintiff's claims arise out of a loan and do not

involve the purchase or lease of either goods or services.  Plaintiff did not seek to purchase or lease

any goods or services from Defendants. Plaintiff is not a consumer as a matter of law under the

DTPA, because the transaction at issue is the servicing of her mortgage loan, a transaction that

relates only to the borrowing of money, which is neither a good nor a service and which is something

that Plaintiff did not seek to purchase or lease.  Therefore, Plaintiff is not "consumer" with respect

to the home loan.   Therefore, because Plaintiff cannot claim "consumer" status, she cannot maintain

a DTPA action and the claim must be dismissed as a matter of law.

**Texas Debt Collection Act Claim**

Defendants assert that there is no evidence that they violated the TDCA.  Plaintiff asserts that

Defendants violated Tex. Fin. Code §§ 392.301(a), 392.303(a), and 392.304(a).

In order to state a claim under the TDCA, Plaintiff must show: (1) the debt at issue is a

consumer debt; (2) Defendants are debt collectors within the meaning of the TDCA; (3) Defendants

committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against

Plaintiff; and (5) Plaintiff was injured as result of Defendants' wrongful act.  The TDCA does not

prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right

of seizure, repossession, or sale that does not require court proceedings." TEX. FIN. CODE §
392.301(b)(3); *Sweet v. Wachovia Bank and Trust Company*, No. 3:03-CV-1212-R, 2004 WL
1238180, at *3 (N.D. Tex. Feb. 26, 2004).

Texas Finance Code Section 392.301(a) prohibits a debt collector from, among other things,
"(7) threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale
of the person's property without proper court proceedings"; or "(8) threatening to take an action
prohibited by law." For a statement to constitute a misrepresentation under the TDCA, defendant
must have made a false or misleading assertion. *Reynolds v. Sw. Bell Tel., L.P.*, No. 2-05-356-CV,
2006 WL 1791606, at *7 (Tex. App.--Fort Worth June 29, 2006, pet. denied). The TDCA does not
prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right
of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code §
392.301(b)(3). Foreclosure is not an action prohibited by law. There is no evidence that Defendants
violated this section of the Texas Finance Code. *See Watson v. Citimortgage, Inc.*, No. 4:10-cv-707,
2012 WL 381205, at *8 (E.D. Tex. Feb. 3, 2012).

Plaintiff claims that Wells Fargo "threaten[ed] to foreclose on the Home when Mrs. Trest was
not actually in default…." The evidence is undisputed that Plaintiff was actually in default, because
she failed to pay the property taxes, failed to maintain insurance coverage, and then ultimately failed
to make the full monthly payments on the loan. The TDCA also includes an express carve-out
relating to non-judicial foreclosures. Tex. Fin. Code § 392.301(b)(3). The TDCA does not prohibit
a secured party from exercising or threatening to exercise its contractual security interest.

Section 392.303(a)(2) prohibits debt collectors from using "unfair or unconscionable means"
in "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation

15

unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).

Plaintiff claims that Wells Fargo "paid escrow items that were Mrs. Trest's responsibility…" The Court agrees with Defendants that under a plain meaning of the statute, advancing funds to pay escrow items is not "collecting or attempting to collect" a "charge, fee, or expense" from the borrower, and therefore Plaintiff's TCDA claim fails because the alleged conduct is not even within the statute.  The Deed of Trust expressly authorizes Wells Fargo to pay the escrow items that Plaintiff failed to pay.  Plaintiff failed to pay the 2010 property taxes and failed to maintain continuous insurance coverage, and Wells Fargo was authorized under the Deed of Trust to pay those delinquent items and recapture the monies expended by establishing an escrow account.

There is nothing in the record to suggest that Defendant used any "unfair or unconscionable means" of collecting interest or other fees that were not expressly authorized by the Note or Deed of Trust or that were not otherwise legally chargeable to the consumer.   The Court concludes that Plaintiff has failed to raise a genuine dispute of material fact as to their section 392.303(a)(2) claim, and Defendants are entitled to judgment as a matter of law on this claim.  There is no evidence that any fees charged to Plaintiff's loan were not allowed under the loan documents.

Section 392.304 generally prohibits a debt collector from using "fraudulent, deceptive, or misleading representation[s]" in collecting on debts and obtaining information concerning a consumer. Tex. Fin. Code § 392.304. Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." Tex. Fin. Code § 392.304(a)(8). "For a statement to constitute a misrepresentation under the [TDCA], the debt collector must have

16

made an affirmative statement that was false or misleading." *Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-CV-03519, 2012 WL 1059043, at *7 (S.D. Tex. Mar. 28, 2012) (citation omitted).

There is no evidence to show that Wells Fargo made an affirmative false or misleading representation concerning the "character, extent, or amount" of the debt, or the "debt's status in a judicial or governmental proceeding."  Plaintiff has not identified any instance or occurrence in which Defendants misrepresented the character, extent, or amount of the loan, and there is no evidence that such a misrepresentation has occurred.  The Court agrees that there is no evidence offered by Plaintiff that would support a violation of this section of the TDCA.  Defendant is entitled to summary judgment on this claim.

**Wrongful Foreclosure Claim**

To prevail on a claim for wrongful foreclosure requires a showing of "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.--Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.--Houston [14th Dist.] 1989, writ denied)). Allegations only of a defect in the foreclosure proceedings are insufficient; rather, it is also necessary that an inadequate selling price resulted from the defect. *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex. App.--San Antonio 1998, no pet.). Under Texas law, an element of a wrongful foreclosure claim is that the property sold for a "grossly inadequate" price. *See Pollett v. Aurora Loan Servs.*, 455 F. App.'x 413, 415 (5th Cir. 2011).  A sales price of more than fifty percent of property value is not "grossly inadequate" as a matter of law. *See Terra XXI Ltd. v. Harmon*, 279 S.W.3d 781, 788 (Tex. App.--Amarillo 2009, pet. denied).

17

Defendants assert that the Property was not sold for a grossly inadequate price. The Court agrees. The Property sold at foreclosure sale for $124,000. Plaintiff testified that she believed at the time of the foreclosure sale that the Property was worth $170,000. Thus, the Property obtained 72.9% of value at the foreclosure sale, which is more than 50% and therefore not grossly inadequate as a matter of law.

Defendants further assert that there is no defect in the foreclosure sale proceedings. The Court agrees. There is no evidence of a defect. In fact, the evidence establishes that Wells Fargo sent Plaintiff a Notice of Default that provided an opportunity to cure within thirty days, Wells Fargo's foreclosure attorneys sent Plaintiff a Notice of Acceleration together with a Notice of Sale at least twenty-one days in advance, Wells Fargo's foreclosure attorneys timely filed the Notice of Sale with the Collin County Clerk, and Wells Fargo's foreclosure attorneys timely posted the notice of sale in the Collin County Courthouse in the area designated for posting notices of sale. All required notices were sent, and Plaintiff fails to raise a material fact issue. Defendants are entitled to summary judgment on Plaintiff's claim for wrongful foreclosure.

**Injunctive Relief**

Plaintiff seeks an injunction preventing Defendants and their agents from evicting the Plaintiff. Under Texas law, a request for injunctive relief, absent a cause of action supporting entry of a judgment, is fatally defective and does not state a claim. Plaintiff has no viable claims against Defendants and thus, she has no basis for injunctive relief. The record is clear that Wells Fargo did have the right to foreclose on the Property and AH4R-TX 2 is a bona fide purchaser of the Property. As a result, summary judgment is proper on Plaintiff's request for injunctive relief.

There is no genuine controversy that Wells Fargo was Plaintiff's lender or that Wells Fargo

was assigned the Deed of Trust.  Plaintiff has failed to raise a material fact issue, and Defendants are entitled to summary judgment on all claims.

It is therefore ORDERED that Defendants Wells Fargo Bank, N.A. and Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment (Dkt. #35) is hereby GRANTED and Defendant AH4R-TX 2, LLC's Motion to Join in Motion for Summary Judgment (Dkt. #39) is hereby GRANTED.  All claims by Plaintiff against Defendants are DISMISSED with prejudice.

**SIGNED this 9th day of June, 2014.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE